**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE FLORIDA**

**LOLA B. BROWN,** *et al.***,**

    **Plaintiffs,**

vs.　　　　　　　　　　　　　　　　　　　　　　　Case No.: 3:07-cv-953-J-16JRK

**NATIONSCREDIT FINANCIAL**
**SERVICES,** *et al.***,**

    **Defendants.**
_____/

**ORDER**

    Plaintiffs, Ms. Lola Brown and Mr. and Mrs. Edward Fleming filed this lawsuit on behalf of themselves and those similarly situated[1] in the Circuit Court of the Fourth Judicial Circuit in and for Duval County, Florida, on September 14, 2007. Plaintiffs sued Defendants, NationsCredit Financial Services Corporation, NationsCredit Mortgage Corporation of Florida and Bank of America, N.A., alleging that Defendants acted unlawfully in connection with mortgage loans made to Plaintiffs.[2] Specifically, Plaintiffs allege predatory practices by Defendants in connection with credit insurance sold to Plaintiffs when their mortgage loans were closed. Plaintiffs assert that the single-premium credit insurance benefitted Defendants because it was not necessarily wanted, insufficiently or not at all disclosed to Plaintiffs and inappropriate for the market because it was a) more expensive than other available types of insurance, b) issued for terms substantially shorter that

---

[1] Plaintiffs seek to pursue this suit as a class action in accordance with Fla. R. Civ. P. 1.220. (Dkt. 2 at p. 1).

[2] Defendants do not dispute that as "national banks" they are subject to "extensive and plenary regulation under National Banking Act of 1864, which is further defined below.

the loans it insured and c) reaped profits for Defendants through Defendants' relationship with the policy issuers or sellers. Based on these assertions, Plaintiffs filed a three-count complaint against Defendants alleging: Count I - violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUPTA"), Fla. Stat. § 501.201, *et seq.*; Count II - Unjust Enrichment; and Count III - Breaches of the Duties of Good Faith and Fair Dealing.

Defendants removed this suit from state to federal court on October 10, 2007. (Dkt. 1). Defendants based removal on original federal question jurisdiction, 28 U.S.C.A. §§ 1331, 1441. Defendants maintain that removal is proper because there is "super pre-emption" or "complete pre-emption" under the National Bank Act of 1864, as amended 12 U.S.C.A § 1, *et seq.* (the "NBA"). Defendants claim that what Plaintiffs characterize as state-law issues are really disguised usury claims that under the NBA can only be brought in federal court. Specifically, Defendants claim that "[b]ecause Plaintiffs' challenge to the fees, financing costs, increased loan costs, and increased financing costs are disguised usury claims, the claims are preempted by the NBA." (Dkt. 18 at p.2).

Plaintiffs disagree with Defendants characterization of their claims and filed a Motion to Remand and a Memorandum in Support. (Dkts. 10 and 11). Defendants also filed a Motion for Judgment on the Pleadings. (Dkt. 21). Plaintiffs filed a Response in Opposition. (Dkt. 30).

**I.     FACTUAL BACKGROUND**

Plaintiffs, all Florida residents, obtained mortgages from Defendants from 1994 through 1998. In conjunction with these mortgages, Defendants sold Plaintiffs either credit life or credit disability insurance, referred to as single-premium credit insurance ("SPCI") because the entire

premium is paid at closing.[3]  Credit insurance insures repayment of a specific debt in the event of a borrower's death, disability or involuntary unemployment depending on the type of coverage purchased.[4]  Plaintiffs' SPCI premiums were added to the amount Plaintiffs financed under each mortgage loan.  Defendant, NationsCredit Mortgage, was the sole beneficiary of the SPCI policies Plaintiffs purchased.

## II.     STANDARD OF ANALYSIS

Federal courts are courts of limited jurisdiction.  As such, they have the power to hear only those cases that Congress or the Constitution has authorized them to hear.  In the Eleventh Circuit, the law favors remand where federal jurisdiction is not absolutely clear.  See Burns v. Windsor Ins. Co., 31 F.3d 1092, 1095 (11 th Cir. 1994).  Thus,  "Removal statutes are construed narrowly; where plaintiff and defendant clash about jurisdiction, uncertainties are resolved in favor of remand." Id.

---

[3] The SPCI purchased by Plaintiffs was issued by an insurance company for which Defendants acted as the agent.  The SPCI premiums were paid to the insurance companies with money Plaintiffs borrowed from Defendants. The mortgage and SPCI amounts at issue are as follows:

Ms. Brown:

1. March 10, 1994, a ten-year mortgage loan from NationsCredit Mortgage with a principal amount of $20,335.65; SPCI - a five-year credit life insurance policy with a premium of $1,336.54
2. February 16, 1996, a twenty-year mortgage loan from NationsCredit Mortgage with a principal amount of $27,039.53; SPCI - a five-year credit life insurance policy with a premium of $1,299.28 and a five-year credit disability policy with a premium of $694.78.
3. February 16, 1998, a 17 year, 11 month mortgage loan from NationsCredit Mortgage with a principal amount of $46,574.17; SPCI - a ten-year credit life insurance policy with a premium of $3,937.37 and a five-year credit disability policy with a premium of $1,135.70.

Mr. and Mrs. Fleming:

1. April 18, 1996, a twelve-year, 11 month mortgage loan from NationsCredit Mortgage with a principal amount of $26,696.40; no SPCI.
2. October 16, 1998, a fifteen-year mortgage loan from NationsCredit Mortgage with a principal amount of $43,518.08; SPCI - a ten-year credit life insurance policy with a premium of $3,448.38 and a five-year credit disability policy with a premium of $1,196.71.

[4] See also 12 C.F.R. § 2.2(b) defining credit life insurance.

3

Removal of a case filed in state court is proper "if the claim is one 'arising under' federal law." Beneficial National Bank v. Anderson, 539 U.S. 1 (2003). Section 1331 provides for federal-question jurisdiction in "a civil action arising under the Constitution, laws, or treaties of the United States." Whether a complaint "arises under" federal law is determined from the face of a plaintiff's complaint. Franchise Tax Bd. v. Construction Laborers Vacation Trust, 463 U.S. 1 (1983). On a motion to remand, "the removing party bears the burden of establishing jurisdiction." Diaz v. Sheppard, 85 F.3d 1502, 1505 (11th Cir. 1995).

A federal court considering a motion to remand begins with the "well-pleaded" allegations in the complaint and ignores any potential federal defenses. See id. However, the "complete pre-emption doctrine" exists as a corollary to the well-pleaded rule. "When the federal statute completely pre-empts the state-law cause of action, a claim which is within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law." Beneficial, 539 U.S. at 8.

The court's inquiry for "complete pre-emption" differs from ordinary pre-emption. The "complete pre-emption" inquiry focuses on whether Congress intended to make the plaintiff's cause of action federal and removable despite the fact that the plaintiff's complaint only contains state law claims. Whitman v. Raley's Inc., 886 F.2d 1177, 1181 (9th Cir. 1989). The inquiry for ordinary pre-emption is substantive in nature and focuses on whether a legal defense exists. Id. This latter inquiry is to be done by a court having jurisdiction. Id.

The Supreme Court has found "super pre-emption" or "complete pre-emption" of state-law claims, with the result these claims are removable to federal court, in only a very few instances for example - the Labor Management Relations Act of 1947 (the "LMRA") or the Employee Retirement

Income Security Act of 1974 ("ERISA"). When conducting a complete pre-emption analysis, courts look at the intent of Congress, that is without clear congressional intent to create removal jurisdiction a case will be remanded to state court. Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58, 68. Courts also look at whether the federal statute at issue completely displaces the state-law claim with a cause of action. Id. at 60.

**III.   ANALYSIS**

The NBA provides, in pertinent part, that the appropriate rate of interest that a national bank may charge its customers is "interest at the rate allowed by the laws of the State . . . where the bank is located. 12 U.S.C.A. § 85. Section 86 of the NBA provides civil remedies for national banks charging interest at a rate that violates this interest limitation. 12 U.S.C.A. § 86. Section 86 provides "precisely what remedies are available against a national bank for usury, in order to promote remedial uniformity and to protect national banks from destructive usury penalties frequently available under state law." See M. Nahas & Co., Inc. v. First Nat'l Bank, 930 F.2d 608, 610 (8th Cir. 1991).

The NBA does not define the term "interest." In 1996, the Comptroller of Currency promulgated Regulation 7.4001 (the "Regulation"), interpreting the term "interest" used in 12 U.S.C. § 85. The relevant subsection reads:

> (a) Definition. The term "interest" as used in 12 U.S.C. § 85 includes any payment compensating a creditor or prospective creditor for an extension of credit, making available of a line of credit, or any default or breach by a borrower of a condition upon which was extended. It includes, among other things, the following fees connected with credit extension or availability: numeric periodic rates, late fees, not sufficient funds (NSF) fees, overlimit fees, annual fees, cash advance fees, and membership fees. It does not ordinarily include appraisal fees, premiums and commissions attributable to insurance guaranteeing repayment of any extension of credit, finder's fees, fees for document preparation or notarization, or fees incurred to obtain credit

>   reports.

Regulation 7.4001, codified at 12 C.F.R. § 7.4001(a).

The Supreme Court addressed the Regulation in Smiley v. Citibank (South Dakota), N.A., 517 U.S. 735 (1996) (involving the question of whether late fees charged to borrowers are "interest" under § 85). The Supreme Court held that "interest" as used in § 85 was ambiguous and the interpretation of interest by the OCC was entitled to deference pursuant to Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837 (1984). See Smiley, 517 U.S. at 737-41. The Supreme Court further opined that the regulation draws a distinction "between those charges that are *specifically assigned* to such expenses [as insuring the loan,] and those that are assessed for simply making the loan, or for the borrower's default" the latter being interest, the former, not. Smiley, 517 U.S. at 741-42 (emphasis in original). Thus, customer charges unrelated to a specific expense incurred by the bank were termed interest; charges related to a specific expense were excepted.

In Beneficial the Supreme Court held that the NBA provides the "exclusive federal cause of action for usury against national banks." See Beneficial, 539 U.S. at 10. After examining §§ 85 and 86 of the NBA the Supreme Court found that these sections "create a federal remedy for overcharges that is exclusive." 539 U.S. at 11.

Plaintiffs claim that this suit alleges that defendants engaged in deceptive practices when selling them SPCI. Plaintiffs explain that their complaint does not allege usury, thus removal was improper. Plaintiffs define usury as "when a lender charges a rate of interest that is higher than legally allowed by law." (Dkt. 11 at p. 4, citing to Black's Law Dictionary 1580 (8th ed. 2004)). Specifically, Plaintiffs claim that they:

6

> [B]ring no usury count and instead assert state law claims for unfair trade practices, unjust enrichment, and breach of the duties of good faith and fair dealing. These claims arise out of the Defendants' sale of [SPCI], with such insurance consisting of deceptive loan costs and fees that vastly inflate the cost of the product to consumers. There is no claim here that Defendants charged an interest rate higher than that allowed by law, or that the interest rate itself amounted to an excessive charge. Defendants' suggestion of usury is wholly unsupported by the U.S. Supreme Court's holding in Beneficial and improperly recasts Plaintiff's state law counts. Moreover, Defendants' position is bereft of any factual support in the complaint. Defendants improvidently removed this action and it should now be remanded to the circuit court for Duval County, Florida.

(Dkt. 11 at p. 5).

Defendants respond that §§ 85 and 86 of the NBA "completely pre-empt" Plaintiffs' state law claims because under the Regulation "[t]he term 'interest' includes 'any payment compensating a creditor . . . for an extension of credit,' that is, any payment to a creditor that compensates the creditor for extending credit." (Dkt. 18 at pp. 7-8). Defendants claim that Plaintiffs true claim for relief is from "increased loan costs" which are the result of "excessive financing costs" composed of fees, costs and expenses associated with the purchase and financing of SPCI. Defendants cite to multiple cases in which courts concluded that a plaintiff's claim, regardless of how it was framed, was subsumed in the OCC's definition of interest in the Regulation. Based on this review of cases, Defendants conclude that:

> The test is clear: if the challenged fees compensate a national bank for extending credit, then the claim is preempted by the NBA because that claim is necessarily a usury claim. As these cases demonstrate, a complaint does not have to use the word "usury" or refer directly to an allegedly excessive interest rate to be completely pre-empted and thereby removable under federal law. Rather, the substance of the claim is determinative. When the plaintiff challenges the cost of credit imposed by a national bank, the claim constitutes a usury claim subject to federal law. The three causes of action in the Complaint therefore are subject to complete [pre-emption] and this court has subject matter jurisdiction."

(Dkt. 18 at p. 12).

The Regulation and cases interpreting the Regulation make clear that the SPCI premiums themselves are not interest. Defendants do not dispute this. See Dkt. 21 at p. 6. This question here is - Does the NBA pre-empt the suit's claims because the charges and fees associated with Plaintiffs' financing of SPCI premiums are properly considered "interest" under the Regulation? To answer this question, the Court reviewed pertinent case law. The following cases were particularly insightful.

In Giddens v. Hometown Financial Services, 938 F.Supp. 801 (M.D. Ala. 1996), car buyers brought a class action to recover for the defendants' alleged fraud in issuing and collecting vehicle single-interest insurance premiums. The Giddens court granted the plaintiff's motion to remand and rejected the defendants' argument that a fraudulent insurance premium could be viewed as interest. The Giddens court concluded that if defendants' argument were accepted, then all insurance premiums would be subject to regulation under the NBA and had the OCC intended for this to be the result a definition of interest that expressly excludes insurance premiums would not have been adopted. Giddens, 938 F. Supp. at 807. The Giddens court also stated that "if it is debatable whether a state-law claim challenging a national bank's interest charges is 'completely pre-empted'" then a state-law claim challenging a national banks's insurance premium (which is not covered by the NBA) surely is not "completely pre-empted." Giddens, 938 F. Supp at 807.

At issue here are fees, costs and charges associated with SPCI. If insurance premiums are specifically excluded from "interest" and thus beyond the reach of the NBA, it stands to reason that fees and charges related to insurance premiums are also not interest. If the fees and charges at issue are not interest, this Court must remand the case because complete pre-emption would not be

8

present.

In Smith v. Beneficial National Bank USA, *et al*., 971 F.Supp. 513 (M.D. Ala. 1997), buyers of a satellite system sued the defendants in state court, alleging fraud and related claims arising from the alleged undisclosed charges in connection with the sale and financing of the satellite system. The case was removed to federal court and the plaintiffs moved to remand. The court determined that remand was proper. Before reaching this conclusion, the court acknowledged that decisions have been sharply divided with "[o]ne group of courts [finding] that the NBA completely pre-empts state law actions claiming a variety of excessive charges relating to bank loans or credit cards . . . . In the other camp are several decisions which have found that actions were improperly removed to federal court because complete pre-emption did not affect the state law claims." Smith, 971 F.Supp at 516. The Smith court continued its analysis of this split, stating "[t]hese outcomes parallel the definition of 'interest' as promulgated by the Comptroller of the Currency . . . . The decisions finding complete pre-emption have dealt with a specifically identified portion of the Comptroller's interest definition, while the group of decisions rejecting complete pre-emption have dealt with nonenumerated subjects." Id. at 517. As in Smith, this suit involves "nonenumerated" subjects.

In Doe v. Norwest Bank Minnesota, N.A., 107 F.3d 1297 (8th Cir. 1997), the plaintiff financed a vehicle and failed to insure it as required under the terms of the financing agreement. The defendant purchased insurance and added the premium to the plaintiff's loan balance. This type of insurance is generally referred to as "force placed insurance." In Doe the Eighth Circuit affirmed the federal court's holding that force placed insurance premiums charged to a borrower's account did not constitute "interest" within the meaning of the usury provisions of the NBA. In reaching its

9

decision, the Eighth Circuit distinguished between "a late fee, which compensates the creditor solely for the effects of the debtor's default, and an insurance change, which compensates the creditor for the cost of protecting its security." Doe, 107 F.3d at 1303.

Building upon the Eighth Circuit's holding in Doe, is the Seventh Circuit's decision in Richardson v. National City Ban of Evansville, 141 F.3d 1228 (7th Cir. 1998). In Richardson, the Seventh Circuit affirmed the district's court's determination that force placed insurance premiums purchased by the defendant and charged to the plaintiff did not constitute "interest" under the NBA. The Seventh Circuit cited to the Supreme Court's decision in Smiley, where the Supreme Court noted that "in the broadest sense all payments connected in any way with the loan . . . can be regarded as 'compensating [the] creditor for [the] extension of credit." Richardson, 141 F.3d at 1231 (citing to Smiley, 517 U.S. at 741-43). The Seventh Circuit distinguished between fees and charges that are interest and forced placed insurance premiums by stating that unlike late fees and default charges which benefit only the bank, force placed insurance benefits both bank and borrower. The Seventh Circuit concluded that adding the cost of the premiums to the plaintiff's principal loan balance did not render the loan usurious under the NBA. Richardson, 141 F.3d at 1232. This conclusion was based in part on the Seventh Circuit's determination that force placed insurance is more analogous to the Regulation's exclusion of "insurance guaranteeing repayment of any extension of credit" from interest than it was to those items specifically enumerated as "interest." Richardson, 141 F.3d at 1231-32. However, in a footnote, the Seventh Circuit specifically stated that this decision does not "reach the issue of whether any mark-up or profit which a bank may earn off of force placed insurance is interest." Id. at 1232, n.5.

The Court now returns to the question before it - does the NBA pre-empt the suit's claims

because the charges and fees associated with Plaintiffs' financing of SPCI premiums are properly considered "interest" under the Regulation? Defendants attempt to fit the fees and charges associated with SPCI into the Regulation's definition of interest in order to justify removal of this case. Defendants focus on the Regulation's "extension of credit" language and claim that the fees and charges associated with Plaintiffs' purchase of SPCI are "interest" because they compensate a creditor for an "extension of credit" or "cost of credit." These arguments are unpersuasive. Defendants ignore the Regulations' clear exclusion of "premiums and commissions attributable to insurance guaranteeing repayment of any extension of credit" from the definition of interest. 12 C.F.R. § 7.4001(a). It seems clear that fees and charges associated with or *specifically assigned* to SPCI, which is an insurance product specifically designed to "guarantee repayment of any extension of credit" and excluded from the Regulation's definition of interest, cannot themselves be "interest." If the fees and charges Plaintiffs are complaining about do not squarely fit into the Regulation's definition of interest, complete pre-emption cannot exist. Thus, it is unclear that Plaintiffs' claims arise under federal law. Because it is unclear whether federal jurisdiction exists in this case, remand is appropriate.

### IV.    CONCLUSION

For the reasons cited above, the Motion (Dkt. 10) requesting remand is **GRANTED**. It is **ORDERED** that this case is **REMANDED** to the Circuit Court of the Fourth Judicial Circuit in and for Duval County, Florida. The Clerk is directed to take all steps necessary to effect remand. The parties shall each bear their costs associated respectively with the bringing and defending of the Motion. This Order does not preclude the circuit court from reaching its own independent conclusion that pre-emption based on the NBA is proper. Here, the Court has merely concluded that complete

pre-emption is not appropriate, thus, removal to federal court is improper. Further, this Order does not address Plaintiffs' request that this suit be allowed to proceed as a class action. Any other motions pending before this Court are **DENIED as MOOT**.

**DONE** and **ORDERED** from Chambers in Jacksonville, Florida on this 15th day of May 2008.

_____
JOHN H. MOORE II
United States District Judge

Copies to: Counsel of Record